**HYDEE FELDSTEIN SOTO**,
City Attorney (SBN 106866)
**JOHN W. HEATH**,
Chief Assistant City Attorney (SBN 194215)
**DONNA WONG**,
Assistant City Attorney (SBN 210741)
**CHARLES D. SEWELL**,
Assistant City Attorney (SBN 198903)
**K. LUCY ATWOOD**,
Deputy City Attorney (SBN 222745)
**RYAN BORHO**,
Deputy City Attorney (SBN 275484)
**MATTHEW T. MEEHAN,**
Deputy City Attorney (SBN 352243)
200 North Main Street, 701 City Hall East
Los Angeles, California 90012
Telephone:  213-978-8120
Facsimile:  213-978-8090
E-mail: lucy.atwood@lacity.org
         ryan.borho@lacity.org
         matthew.meehan@lacity.org

Attorneys for Defendant,
CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRINAH MILSTEIN, individually and as Trustee of GLORY OF THE SNOW 1031 TRUST, a California Trust, and ROY BANK, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY OF LOS ANGELES, a Municipal Corporation and Charter City, and KAREN BASS, in her official capacity as Mayor of Los Angeles,<br><br>Defendants. | **CASE NO: 2:26-cv-00747-PA-MBK**<br>The Honorable Percy Anderson<br><br>**CITY OF LOS ANGELES' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FAC; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>[F.R.C.P. 12(b)(1), 12(b)(6)]<br><br>[*Request for Judicial Notice, Declaration of Matthew T. Meehan, and [Proposed] Order filed concurrently herewith*]<br><br>Date:  September 28, 2026<br>Time:  1:30 PM<br>Place:  United States Courthouse<br>        350 West 1st Street<br>        Los Angeles, California 90012<br>        Courtroom 9A |

1

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

## NOTICE OF MOTION AND MOTION TO DISMISS

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on September 28, 2026 at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Percy Anderson, in Courtroom 9A, 9th Floor, located at United States Courthouse, 350 West 1st Street, Los Angeles, California 90012, Defendant City of Los Angeles ("City")[1] will, and hereby does, move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(6) to dismiss the First Amended Complaint (FAC) as follows:

## MOTION TO DISMISS

1.  Plaintiffs fail to allege a taking; and

2.  Plaintiffs' allegations of harm by third parties does not create municipal liability; and

3.  Plaintiffs' takings claims are unripe for judicial review.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities; the records and files in this action, the concurrently-filed Request for Judicial Notice, and upon any other matter the Court may consider.

The Motion was necessitated after meet and confer efforts pursuant to Local Rule 7-3 which took place on July 2, 2026.  (Declaration of Matthew T. Meehan, ¶ 2).

Dated: July 17, 2026          **HYDEE FELDSTEIN SOTO, City Attorney**

By:  _/s/ Matthew T. Meehan_____
**MATTHEW T. MEEHAN**
Deputy City Attorney[2]

_Attorneys for Defendant_
CITY OF LOS ANGELES

---

[1]     Plaintiffs erroneously name Karen Bass, in her official capacity as Mayor of the City of Los Angeles, as a separate defendant in this suit. The City of Los Angeles files this Motion to Dismiss on behalf of the City as a whole, which includes the Mayor in her Official Capacity ("City").

[2]     Pursuant to L.R. 5-4.3.4(a)(2)(i), I hereby attest that all signatories listed and on whose behalf the filing is submitted, concur in those filing's content and have authorized this filing.

2

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

TABLE OF CONTENTS

I.    INTRODUCTION .......................................................................................8

II.   FACTUAL BACKGROUND..................................................................9

      A.    Plaintiffs Purchased the Property in 2023 after Being Told It May Become an HCM and that Tourists Visit the Property and Ring the Doorbell. ........................................................................................9

      B.    The City Designated the Property as an HCM, Finding that It Is "Associated with the Lives of Historic Personages Important to National, State, City, or Local History" as the Home of Internationally Known American Model and Actress Marilyn Monroe. ...........................................................................................9

      C.    Plaintiffs Filed Suit and the State Court Rejected Plaintiffs' Claims Upholding the City's HCM Designation; Plaintiffs Appealed. ..........10

      D.    The City's CHO Exists to Preserve the History of Los Angeles and Its Culture, But Provides Substantial Flexibility to Owners for Maintenance of Properties, Development, as well as Substantial Alteration, Demolition, or Relocation.................................................11

            1.    Plaintiffs Are Free to Maintain the Property, Develop Their Land, or Otherwise Engage in Their Property Development Goals Notwithstanding HCM Status, But Plaintiffs Have Not Pursued Any Maintenance, Development, Demolition, Substantial Alteration, or Relocation.......................................12

            2.    The City's Code Allows Maintenance of HCMs and Additional Uses Beyond the Normal Zoning Code, But Plaintiffs Have Chosen Not to Maintain the Property or Pursue Permits for the Property. ................................................13

      E.    Plaintiffs Incorrectly Claim Their Demolition Permits Have Been Revoked; the Demolition Permit Is Stayed, Not Revoked.................14

III.  STANDARD OF REVIEW ........................................................................15

IV.   LEGAL ARGUMENT ...............................................................................16

      A.    The FAC Must Be Dismissed Because, as this Court Previously Ruled, No Physical Taking Has Occurred. ........................................16

      B.    Plaintiffs' Claims Alleging a Regulatory Taking Must Be Dismissed Because (1) Designation Did Not Unreasonably Impair the Value or Use of Plaintiffs' Property, (2) Plaintiffs Fail to Allege More than a Unilateral Expectation of the Ability to Demolish the Structure, and (3) the City's Designation Served an Important Public Interest in Historic Preservation. .........................................................................18

            1.    Dismissal Is Warranted Because the City's Designation Did

3

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

Not Unreasonably Impair the Value or Use of Plaintiffs' Property, the First *Penn Central* Factor, and Mere Diminution in Value Does Not Constitute a Taking. ...................................18

2.  The FAC Should Be Dismissed Because, Failing the Second *Penn Central* Factor, Plaintiffs Allege Only a Unilateral Expectation of the Property's Demolition without Application of the City's Code. ...................................................22

3.  The Third Penn Central Factor Weighs in Favor of Dismissal Because the City's Designation Served an Important Public Interest in Historic Preservation..................................24

C.  Plaintiffs' Claims of Alleged Harm By Third Parties Do Not Create a Basis for Municipal Liability.............................................25

1.  Plaintiffs Have Not Alleged an Official Municipal Policy or Custom that Was the "Moving Force" Behind Their Alleged Harm...............................................................................25

2.  Section 1983 Claims Cannot Be Based on Harms by Private Actors. .......................................................................27

D.  Plaintiffs' Takings Claims Are Unripe for Judicial Review Because: (1) Plaintiffs' Demolition Permit Was Not Revoked; (2) Plaintiffs Have Not Applied to Demolish, Substantially Alter, or Relocate the Property; and (3) Plaintiffs Have Not Applied to Develop the Property. ...............................................................................28

1.  Because No Physical Taking Occurred Here, the Court Should Analyze the Ripeness of Plaintiffs' Claims. .............................28

2.  Plaintiffs' Claims Are Not Ripe Because while the HCM Status Is Final, Plaintiffs Have Not Submitted Even One Application to Alter the Property...........................................27

3.  Plaintiffs' Pursuit of Their State Court Appeal Puts the Ultimate Property Status in Flux and It Is Not Final. ...............28

4.  Plaintiffs' Demolition Permit Was Not Revoked; Instead, a Stay Was Placed on the Permit Until Such Time as Plaintiffs Pursue, and Are Granted, Alternative Relief. ...........................28

5.  Plaintiffs' Alleged Harms Are Purely Speculative....................30

E.  Plaintiffs' Takings Claims Also Fail Because Developers Are Required to Comply with City Code and Minor Delays in Permitting Do Not Constitute a Taking. ...............................................31

V.  CONCLUSION.................................................................31

4

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Cases**

*Agins v. Tiburon*,
447 U.S. 255, 260 (1980)................................................................................. 31

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................ 17

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*,
520 U.S. 397 (1997)........................................................................................ 26

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................ 16

*Boise Cascade Corp. v. United States*,
296 F.3d 1339 (Fed. Cir. 2002) ...................................................................... 32

*Bridge Aina Le'a, LLC v. Land Use Comm'n*,
950 F.3d 610 (9th Cir. 2020) .......................................................................... 19

*Cedar Point Nursery v. Hassid*,
594 U.S. 139 (2021)........................................................................................ 17

*Colony Cove Props., LLC v. City of Carson*,
888 F.3d 445 (9th Cir. 2018) .......................................................................... 20

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*,
508 U.S. 602 (1993)........................................................................................ 20

*Cooley v. United States*,
324 F.3d 1297 (2003)...................................................................................... 32

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
489 U.S. 189 (1989)). ..................................................................................... 27

*Dufau v. United States*,
22 Cl. Ct. 156 (Cl. Ct. 1990)........................................................................... 32

*Garcia v. Superior Court*,
50 Cal. 3d 728 (1990) ..................................................................................... 27

*Goldblatt v. Town of Hempstead*,
369 U.S. 590 (1962)........................................................................................ 19

*Guggenheim v. City of Goleta*,
638 F.3d 1111 (9th Cir. 2010). ....................................................................... 24

*Hadacheck v. Sebastian*,
239 U.S. 394 (1915)........................................................................................ 20

*Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*,
452 U.S. 264 (1981)........................................................................................ 31

*Horne v. Dep't of Agric.*,
569 U.S. 513 (2013)). ..................................................................................... 32

*Kennedy v. City of Ridgefield*,
439 F.3d 1055 (9th Cir. 2006). ....................................................................... 27

*Knick v. Township of Scott*,
588 U.S. 180 (2019)........................................................................................ 28

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

*Lingle v. Chevron U.S.A. Inc.*,
     544 U.S. 528 (2005) .................................................................................... 19

*Lucas v. S.C. Coastal Council*,
     505 U.S. 1003 (1992) .................................................................................. 18

*MacDonald, Sommer & Frates v. Yolo County*,
     477 U.S. 340 (1986) .................................................................................... 30

*MacLeod v. County of Santa Clara*,
     749 F.2d 541 (1984) .................................................................................... 19

*Milstein v. City of Los Angeles*,
     2:26-cv-00747-PA-MBK, 2026 WL 1270751 (C.D. Cal. May 6, 2026) .......... 17

*Monell v. Department of Social Services*,
     438 U.S. 658 (1978), ................................................................................... 26

*Murr v. Wisconsin*,
     582 U.S. 383 (2017) .................................................................................... 23

*Pakdel v. City and County of San Francisco*,
     594 U.S. 474 (2021) .................................................................................... 29

*Palazzolo v. Rhode Island*,
     533 U.S. 606 (2001) .................................................................................... 19

*Ruckelshaus v. Monsanto Co.*,
     467 U.S. 986 (1984) .................................................................................... 19

*William C. Haas & Co. v. City & County of San Francisco*,
     605 F.2d 1117 (9th Cir. 1979), ................................................................... 20

*Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*,
     473 U.S. 172 (1985), ................................................................................... 28

*Wyatt v. United States*,
     271 F.3d 1090 (Fed. Cir. 2001) ................................................................... 32

**Statutes**

**Civil Code of Procedure**

8(a)(2) ........................................................................................................... 16

12(b)(1) ........................................................................................................... 2

12(b)(6) ........................................................................................................... 16

**Los Angeles Administrative Code**

§ 22.171 ...................................................................................................*passim*

§ 22.171.7 ............................................................................................... 10, 12

§ 22.171.10 .................................................................................................. 12

§ 22.171.11 .................................................................................................. 14

§ 22.171.14(a) .......................................................................................... 12, 15

**Los Angeles Municipal Code**

§ 91.106.1.1 .............................................................................................. 11, 29

6

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

## MEMORANDUM OF POINTS & AUTHORITIES

## I.   INTRODUCTION

This action involves the City of Los Angeles's (City's) designation of Marilyn Monroe's former residence for historic and cultural preservation.[3]  Plaintiffs Brinah Milstein, individually as Trustee of the Glory of the Snow 1031 Trust, and Roy Bank (Plaintiffs), purchased a single-family home formerly owned by Marilyn Monroe at 12305 Fifth Helena Drive (Property) in the Brentwood neighborhood of the City.  The City subsequently designated the property as a Historic-Cultural Monument (HCM).

Plaintiffs purchased a single-family home and continue to own the same single-family home they purchased; HCM designation neither changes that fact, nor does it preclude Plaintiffs' speculative development ideas.  Nevertheless, Plaintiffs are seeking compensation from the City for recognizing a historical landmark.

The City moves to dismiss the "First Amended Complaint for: 1) Injunctive Relief, or Alternatively, 2) Just Compensation" (FAC) without leave to amend because:

*First*, as this Court previously held, no physical taking has occurred;

*Second*, Plaintiffs' regulatory taking claims fail as the HCM designation did not unreasonably impair the value or use of the Property and historic designation serves an important public interest;

*Third*, Plaintiffs' Section 1983 claims fail because alleged harm by third parties does not create municipal liability and the City did not cause any harm;

*Fourth*, Plaintiffs' claims are unripe for judicial review because the demolition permit was not revoked and Plaintiffs have not filed even an application to demolish, relocate, or develop the Property; and

---

[3]   Plaintiffs erroneously name Karen Bass, In Her Official Capacity As Mayor of the City of Los Angeles, as a separate defendant in this suit.  The City of Los Angeles files this Motion to Dismiss on behalf of the City as a whole, which includes the Mayor in her Official Capacity.

7

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

*Finally*, Plaintiffs' claims fail because they are required to comply with City Code and minor delays do not constitute a taking.

## II.   FACTUAL BACKGROUND

### A.   Plaintiffs Purchased the Property in 2023 after Being Told It May Become an HCM and that Tourists Visit the Property and Ring the Doorbell.

In July 2023, Plaintiffs purchased the Property—located immediately adjacent to the home where Plaintiffs reside. FAC ¶¶ 22–23; City's Request for Judicial Notice (City's RJN) Ex. 1, at 1.  Prior to purchasing the Property, the sellers informed Plaintiffs that Marilyn Monroe was a previous owner, that the Property may be designated as an HCM, and that tourists visit the home and ring the doorbell.  City's RJN Ex. 1, at 15.  The sellers provided Plaintiffs with a property-sales disclosure stating:

> The property used to be owned by Marilyn Monroe, and . . . We get visits on the street from tourists, and they occasionally ring the doorbell. . . . While the house is not currently designated as a historic cultural monument, it could become subject to such a designation in the future.

*Id.* at 15.  Despite the explicit notice that the Property was a known destination for tourists and a candidate for future landmark status, Plaintiffs proceeded with the $8.35 million purchase with the stated intent of demolishing the residence. FAC ¶¶ 5, 23, 30, 31; City's RJN Ex. 1, at 11.

### B.   The City Designated the Property as an HCM, Finding that It Is "Associated with the Lives of Historic Personages Important to National, State, City, or Local History" as the Home of Internationally Known American Model and Actress Marilyn Monroe.

On January 18, 2024, the CHC unanimously voted to recommend designating the Property as an HCM at a public hearing.  FAC, Ex. 1.  At the hearing, City staff recommended designating the Property as "'associated with the lives of historic personages important to the national, state, or local history' as the home of

8

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

internationally known American model and actress Marilyn Monroe." *Id.* at AR00321. Supporting this finding, staff explained that Ms. Monroe "is widely regarded as one of the most iconic film figures of the 20th century"; that her popularity continues to the current day and is continually recognized; that, although she led an "itinerant lifestyle," the Property "is the first and only residence Ms. Monroe purchased by herself" and "represents a portion of her productive period and an embarkation on a new phase of her life" as she was actively pursuing her career at the time; and that the Property retained "a sufficient level of integrity of location, design, setting, materials, workmanship, feeling, and association to convey its significance." *Id.* at AR00323–25.

On June 26, 2024, the Los Angeles City Council voted 12-0 to designate the Property as an HCM. City's RJN, Ex. 4. The City Council's vote adopted a report by the Planning and Land Use Management Committee which determined that the Property conforms with the definition of an HCM pursuant to LAAC § 22.171.7, adopted the findings of the CHC as the findings of City Council, and approved the CHC's recommendation that the Property be designated as an HCM. City's RJN, Ex. 5.

## C. Plaintiffs Filed Suit and the State Court Rejected Plaintiffs' Claims Upholding the City's HCM Designation; Plaintiffs Appealed.

On May 4, 2024, before HCM designation took place, Plaintiffs filed a writ petition and complaint asserting eight causes of action as well as a motion for preliminary injunction in state court. *See* City's RJN, Ex. 1 at 1. The state court denied the preliminary injunction motion on June 4, 2024. *Id.* at 2. After the City Council designated the Property, Plaintiffs filed an amended writ petition and complaint alleging ten causes of action on August 8, 2024 (State Petition). *Id.* at 1.

At the August 28, 2025 trial on Plaintiffs' State Petition, Plaintiffs argued that the City's designation of the Property violated their due process rights; that the designation is not supported by substantial evidence; that the City's notice throughout the proceedings was procedurally deficient; that the City failed to act within CHO

9

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

deadlines, resulting in the designation application being deemed denied; and that the City erroneously found that designation of the Property was categorically exempt from CEQA. *See id.* at 4–31. On September 9, 2025, the court adopted a decision it issued on September 2, 2025, denying Plaintiffs' claims in their entirety. City's RJN, Ex. 6. Plaintiffs filed an appeal in the Court of Appeal. *Id.*; City's RJN, Ex. 7.

**D.     The City's CHO Exists to Preserve the History of Los Angeles and Its Culture, But Provides Substantial Flexibility to Owners for Maintenance of Properties, Development, as well as Substantial Alteration, Demolition, or Relocation.**

The City originally adopted the CHO in 1962 for the purpose to preserve the history of Los Angeles and its culture. *See* Los Angeles Administrative Code (LAAC) § 22.171. HCM designations are governed by the CHO, and the plain language of the City's Code allows development or maintenance of a Property with HCM status and even allows substantial alteration, demolition, or relocation of an HCM subject to a potential hearing process. City's RJN, Ex. 2 (LAAC §§ 22.171–22.171.18). Any permit in the City requires an application—this is not unique to Plaintiffs.[4]

Under the CHO, the City's Cultural Heritage Commission (CHC) serves the express purpose of "perform[ing] those functions relating to historic and cultural preservation of sites, buildings or structures that embody the heritage, history and culture of the City." LAAC § 22.171. The CHO does not require that a property be publicly viewable as a condition for designation. *See id.*

The City Council may designate an HCM after recommendation by the CHC, and designation may be based on one of three criteria. City's RJN, Ex 2 at 2–3 (LAAC

_____

[4]     *See* LAMC § 91.106.1.1 ("No person shall erect, construct, alter, repair, demolish, remove or move any building or structure, nor shall any person commence any liquid washing, compressed air cleaning or steam cleaning of exterior surfaces of any building unless said person has obtained a permit therefor from the department. A separate permit shall be obtained for each separate building or structure except that a group of temporary structures erected on one site for a limited period of time may be included on one permit.").

10

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

§ 22.171.7).  The HCM designation process begins with either initiation or application.  LAAC § 22.171.10.  In this case, as discussed above, a member of the City Council initiated consideration of the Property.  City's RJN, Ex. 3.

Owners of a site, building, or structure, that has been designated as an HCM may apply to the City for a permit for the property's demolition, substantial alteration, or relocation, and such application may be subject to review by the CHC.  LAAC §§ 22.171.14–15.  Permits for routine maintenance merely require clearance sign-off.

The CHO expressly provides that the CHC shall base a determination on the approval of a permit for the substantial alteration of an HCM on each of three findings:  (1) "[t]he substantial alteration . . . complies with the Standards for Rehabilitation approved by the United States Secretary of the Interior; (2) [w]hether the substantial alteration protects and preserves the historic and architectural qualities and the physical characteristics that make the site, building or structure a designated [HCM];" and (3) compliance with the California Environmental Quality Act (CEQA).  LAAC § 22.171.14(a).

Likewise, the CHO provides that the CHC shall base its determination on the approval of a permit for the demolition or relocation of any HCM on the following:  (1) "[a] report regarding the structural soundness of the building or structure and its suitability for continued use, renovation, restoration or rehabilitation from a licensed engineer or architect who meets the Secretary of the Interior's Profession Qualification Standards . . . ."; and (2) Compliance with the CEQA.  LAAC § 22.171.14(b).

Oddly, Plaintiffs claim that they have to prove the Property is structurally unsound to demolish it, but this is at odds with the plain language of the CHO and simply not correct.  FAC ¶ 48.  The CHO does not state structural unsoundness as a requirement; instead, its plain language states the CHC must base its determination on a report from a licensed professional.  LAAC § 22.171.14(b).

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

Permits for proposed demolition, substantial alteration, or relocation of an HCM may be referred to the CHC by staff, and the CHC has 30 days from the date of a referral to object.  LAAC § 22.171.15.  The CHC, however, waives any objections if none are filed with the appropriate department within the 30-day period.  *Id.*  If the CHC objects, a hearing must be held and a stay is placed on the issuance any permit for the demolition, substantial alteration, or relocation of the HCM for a period of 30 to 180 days.  *Id.*  At the hearing, staff reports on "progress regarding preservation" and the CHC "shall take all steps within the scope of its powers and duties as it determines are necessary for the preservation of the [HCM] to be demolished, altered or relocated."  *Id.*

In the event the CHC "finds at the end of the first 100 days of the Stay that the preservation of the Monument cannot be fully accomplished with the 180-day Stay period, and the Commission determines that preservation can be satisfactorily completed within an additional period not to exceed an additional 180-day Stay, the Commission may recommend to the City Council that the Stay be extended to accomplish the preservation."  LAAC § 22.171.15.  "The CHC's recommendation for an extension of the Stay shall set forth the reasons for the extension and the progress to date of the steps taken to preserve the HCM.  If it appears that preservation may be completed within the time extension requested, the City Council may approve the request for extension of the Stay not to exceed an additional 180 days for the purpose of completing preservation of the [HCM]."  *Id.*  Once this timeline ends, the stay is no longer in place; thus, there is a specific time limit within which the City can stay permits.

    **1.**    **Plaintiffs Are Free to Maintain the Property, Develop Their Land, or Otherwise Engage in Their Property Development Goals Notwithstanding HCM Status, But Plaintiffs Have Not Pursued Any Maintenance, Development, Demolition, Substantial Alteration, or Relocation.**

Plaintiffs claim they purchased the Property to demolish its residence, but also obliquely contend they are interested in development. FAC ¶¶ 30, 54, 80, 83.  Under the

12

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

City's Code, Plaintiffs are not precluded from modifying the Property, developing their half-acre of land, building other structures, or otherwise engaging in property-development goals. *See* LAAC §§ 22.171.1–16. However, Plaintiffs have not pursued any efforts to modify, demolish, substantially alter, relocate the Monroe Residence, or otherwise develop their Property—indeed, Plaintiffs nowhere allege they have tried to develop the Property and been rebuffed by the City. Instead, they misrepresent the City's HCM designation as a permit revocation—which it is not—and have sat on their hands vis-à-vis any maintenance, development, or use of the Property. FAC ¶ 48 (house would cost "approximately $700,000 to rehabilitate"), ¶¶ 64–65 ("house is not rentable to a third party because of its deteriorated conditions . . . Plaintiffs do not want to be landlords").

### 2. The City's Code Allows Maintenance of HCMs and Additional Uses Beyond the Normal Zoning Code, But Plaintiffs Have Chosen Not to Maintain the Property or Pursue Permits for the Property.

As noted above in Section II.D., the City provides a specific regulatory framework for properties designated as HCMs under the CHO. This framework includes both maintenance obligations and potential land-use flexibilities designed to facilitate the preservation and continued use of historical resources. *Supra* at II.D. No review by the CHC is required for routine maintenance of a property—including permits; CHC review is only triggered by substantial alteration, demolition, or relocation. LAAC §§ 22.171.14–15.

Under Section 22.171.11 of the LAAC, for example, once a property is designated as an HCM, the CHC is empowered to take steps to ensure the preservation of the HCM in a manner consistent with public health, safety, and the general welfare. City's RJN, Ex. 2. "These steps may include assistance in the creation of civic citizens' committees, assistance in the establishment of a private fund for the acquisition or restoration of designated Monuments, and recommendation that a Monument be

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

acquired by a governmental agency where private acquisition is not feasible." LAAC § 22.171.11. The Code further allows for certain discretionary flexibilities for HCMs that may exceed standard residential zoning limitations, provided such alterations protect the "historical and architectural qualities and physical characteristics" of the site. LAAC § 22.171.14(a).

Plaintiffs acknowledge in their FAC that the Property currently contains "deteriorating" structures, including a leaking tile roof and non-functional interior elements. FAC ¶ 28. The FAC further alleges that the house has remained "unoccupied since late 2019." *Id.* The FAC *does not* allege, however, that Plaintiffs have applied for any permits to perform the repairs or maintenance necessary to stabilize these conditions or return the house to a habitable state. Indeed, while Plaintiffs allege that the HCM designation has "stripped the Property of its development potential" and made it unrentable, FAC ¶¶ 64, 80, Plaintiffs' allegations make clear:

- Plaintiffs have focused their permit activity exclusively on the total demolition of structures on the Property (*id.* ¶¶ 5, 7, 30, 32);
- Plaintiffs have failed to apply for any permits to modernize the residence under the "substantial alteration" process—a codified framework they discussed at length in their initial Complaint (Dkt. No. 1 ¶¶ 50-53), but left out of the FAC; and
- Plaintiffs have not formally begun any process under CEQA, including requesting findings regarding any "overriding economic, legal, social, technological, or other benefits" that may allow for alterations within the HCM designation. Dkt. No. 1 ¶¶ 60-65.

### E. Plaintiffs Incorrectly Claim Their Demolition Permits Have Been Revoked; the Demolition Permit Is Stayed, Not Revoked.

In their Opposition to the City's initial Motion to Dismiss (Dkt. No. 32) and now in their FAC, Plaintiffs contend their demolition permit and corresponding grading

14

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

permit (Permits) were revoked.  FAC ¶¶ 5, 39, 78.  But as the City previously explained, the Permits *have not* been revoked.  The Los Angeles Department of Building and Safety (LADBS) issued a notice of "Intent to Revoke" the demolition permit on September 8, 2023, which remains the most recent LADBS action on the permit.  City's RJN, Ex. 8 (Permit and Inspection Report for Demolition Permit No. 23019-30000-03126); *see also id.*, Ex. 9 (Permit and Inspection Report for Grading Permit No. 23030-30000-04877).  The status of the demolition permit as *stayed*, and *not revoked*, is not subject to reasonable dispute.

## III.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief may be granted.  Rule 8(a)(2) requires a claim for relief to include "a short and plain statement of the claim showing the pleader is entitled to relief."  A claim need not necessarily contain detailed factual allegations, but it must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"[I]n *Twombly*, the Supreme Court rejected the notion that 'a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery.' *Twombly*, 550 U.S. at 561 (internal quotation omitted).  Instead, the Court adopted a 'plausibility standard,' in which the complaint must 'raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction].' *Id.* at 556.  For a complaint to meet this standard, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.' *Id.* at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ('[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action') (alteration in original)); . . . . '[A] plaintiff's

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'  *Twombly*, 550 U.S. at 555 (internal quotations omitted).  In construing the *Twombly* standard, the Supreme Court has advised that 'a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'  *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937 (2009)."  *Milstein v. City of Los Angeles*, 2:26-cv-00747-PA-MBK, 2026 WL 1270751, *3 (C.D. Cal. May 6, 2026) [Dkt. No. 34].

## IV.   LEGAL ARGUMENT

### A.   The FAC Must Be Dismissed Because, as this Court Previously Ruled, No Physical Taking Has Occurred.

The FAC must be dismissed because the facts have not changed, and this Court has previously held no physical taking has occurred.  In its May 6, 2026 Ruling, this Court held "the Complaint fails to plausibly allege any *government-authorized* invasion of the Property and thus fails to state a physical taking claim."  *Milstein*, 2026 WL 1270751 at *5.  The FAC does not include additional facts that would support this claim.

A physical taking occurs when the government "has physically taken property for itself or someone else – by whatever means . . . ."  *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021).

Here, Plaintiffs claim members of the public have physically tried to enter the Property and have trespassed on the Property.  FAC ¶¶ 31, 59, 68–71.  Plaintiffs contend the City induced members of the public to take these illegal actions by

16

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

designating the Property as an HCM. *Id.* ¶ 70–71. Plaintiffs, however, do not and cannot allege that the CHO, the designation of the property as a Monument, or any other City action authorized or encouraged invasions of the Property by members of the public. To the contrary, Plaintiffs acknowledge that the police respond to their calls for assistance to these crimes. *Id.* ¶ 59.

These allegations are not enough to constitute a physical taking. As this Court previously held, "Plaintiffs points to no actions by the City authorizing or encouraging members of the public to access the Property itself. Nor do Plaintiffs allege that the City has refused to enforce or prevented Plaintiffs from enforcing their rights against individuals who trespass on the Property." *Milstein*, 2026 WL 1270751, *5.

Plaintiffs acknowledge the City responds to complaints related to trespassers, FAC ¶ 59, and do not identify any government-authorized invasion. Therefore, their claim for a physical taking fails and must be dismissed.

> **B.  Plaintiffs' Claims Alleging a Regulatory Taking Must Be Dismissed Because (1) Designation Did Not Unreasonably Impair the Value or Use of Plaintiffs' Property, (2) Plaintiffs Fail to Allege More than a Unilateral Expectation of the Ability to Demolish the Structure, and (3) the City's Designation Served an Important Public Interest in Historic Preservation.**

Plaintiffs also fail to state a claim for a regulatory taking. A regulatory taking occurs when the government "'imposes regulations that restrict an owner's ability to use his own property . . . .' *Cedar Point*, 594 U.S. at 147; *see Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1008 . . . (1992) ('[R]egulations that leave the owner of land without economically beneficial or productive options for its use . . . carry with them a heightened risk that private property is being pressed into some form of public service under the guise of mitigating serious public harm.')." *Milstein*, 2026 WL 1270751, *6.

Plaintiffs fail to allege a taking under the *Penn Central* test. The *Penn Central* analysis focuses on three factors: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct, investment-

17

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

backed expectations; and (3) the character of the government action.  *Penn Central*, 438 U.S. at 124; *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005); *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001).  These factors are not a checklist, and a court may thus dispose of a takings claim on the basis of just one or two of these *Penn Central* factors.  *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005 (1984) (rejecting a takings claim on one factor, the absence of reasonable investment-backed expectations); *see also Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 630 (9th Cir. 2020) ("The first and second *Penn Central* factors are the primary factors").

Although ***only one*** factor needs to be met to dispose of Plaintiffs' takings claim, all three of the *Penn Central* factors weigh in favor of dismissal here.  Therefore, Plaintiffs do not—and cannot—claim the City's designation of the Property gave rise to a taking.

**1.    Dismissal Is Warranted Because the City's Designation Did Not Unreasonably Impair the Value or Use of Plaintiffs' Property, the First *Penn Central* Factor, and Mere Diminution in Value Does Not Constitute a Taking.**

The first *Penn Central* factor asks whether the government's action "unreasonably impairs the value or use of the property" in light of its general use. *Palazzolo*, 533 U.S. at 617.  As elaborated upon by the courts, the concept of unreasonable impairment is a high bar.  "If this ordinance is otherwise a valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional." *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 592 (1962).  A denial of the highest and best use of a property does not constitute a taking.  *MacLeod v. County of Santa Clara*, 749 F.2d 541, 548 (1984).  Even a "substantial diminution in the value of land," standing alone, is not sufficient to establish a regulatory taking.  *William C. Haas & Co. v. City & County of San Francisco*, 605 F.2d 1117, 1120 (9th Cir. 1979), *cert. denied*, 445 U.S. 928 (1980) (value reduced from $2,000,000 to $100,000—*i.e.,* 95% diminution); *Hadacheck v. Sebastian*, 239 U.S. 394, 405 (1915) (an alleged diminution in value from $800,000 to

18

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

$60,000 was insufficient to establish a taking); *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018) (noting that even "diminution in property value because of governmental regulation ranging from 75% to 92.5% does not constitute a taking"); *Lucas*, 505 U.S. at 1019, n.8 (even a 95% loss may not recover).

The City did not unreasonably impact the use or value of Plaintiffs' Property here because Plaintiffs purchased a single-family home, still own a single-family home, and the Property is physically untouched by the HCM designation—it is now and may continue to be used as single-family residential home.  FAC ¶¶ 2, 22–23.  Plaintiffs' claim thus fails at the first step because the FAC alleges nothing more than a "mere diminution in value," which is insufficient as a matter of law to constitute a taking.  *See, e.g. Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 645 (1993).

Plaintiffs allege that the HCM designation prevents them from demolishing the existing house on the Property, potentially to build a bigger, 10,000-square-foot home. FAC ¶¶ 30, 50, 54.  However, neither the inability to develop a Property to its highest and best use nor the denial of "the ability to exploit a property interest" previously believed available does not establish a taking.  *Penn Central*, 438 U.S. at 130.  And, more importantly, ***the CHO does not prohibit*** Plaintiffs' development on their half acre parcel; it merely addresses demolition, substantial alteration, and relocation.  *See supra* Section II.D.  The fact is ***Plaintiffs have not applied for any development***, and so their speculative claims are simply not plausible and do not create a basis for a regulatory taking claim.  *See* FAC; *Twombly*, 550 U.S. at 561 (rejecting wholly conclusory statements).

While Plaintiffs contended in the initial Complaint that the market value of the house is "zero, or a negative amount" (Dkt. No. 1 ¶ 75), Plaintiffs now claim the Property is worth "approximately $820,000," FAC ¶¶ 53, 81, without any explanation for the sudden increase; like the initial Complaint, however, this allegation is on its face

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

conclusory, speculative, and a plainly implausible legal conclusion couched as a factual allegation. Indeed, the median price of a home in Los Angeles County is $998,500, and that is based on square footage of 1,706—substantially less than Plaintiffs' Property. City's RJN, Ex. 11. Here, Plaintiffs admit their Property consists of a 2,300-square-foot Spanish-colonial revival house on an over half acre lot (approximately 23,222-square-foot) in the highly desirable neighborhood of Brentwood which is obviously going to be more valuable than the average county home. FAC ¶ 22. Plaintiffs also simply conclude the Property would be worth $9 million if vacant without HCM designation and would be worth more than $17 million if developed per City Code. FAC ¶¶ 52, 54, 82–83. These claims are wholly speculative, and, again, Plaintiffs do not allege they have applied to develop the lot per City Code.

Moreover, contrary to Plaintiffs' claims in the FAC, the plain language of the City's Code demonstrates that Plaintiffs may develop, build, and use their Property and must simply go through a hearing process to demolish, substantially alter, or relocate the HCM. *Cf.* FAC ¶¶ 48–49, 56 *with* City's RJN Ex. 2 at 8 (LAAC § 22.171.14). While even a regulation that "require[es] land to be left substantially in its natural state" may carry a heightened risk of a taking (*Lucas*, 505 U.S. at 1018), a regulation that preserves an existing, substantial residential structure—even one in need of repair—does not.

Plaintiffs' FAC mispresents the alleged "unrentable" condition of the Property as being caused by the City's HCM designation, rather than Plaintiffs' own decision not to take any action—maintenance, development, or otherwise. The FAC contends the Property is "dilapidated" and "unrentable" due to its current physical condition—a condition that predates the City's HCM designation. FAC ¶¶ 2, 30. The alleged lack of economic utility is a function of Plaintiffs' own choice not to maintain the improvements, rather than a restriction imposed by the City; therefore, that condition cannot constitute an "economic impact" for purposes of a *Penn Central* analysis.

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

In sum, Plaintiffs' allegations of economic harm are rooted in the costs of normal property ownership—property taxes, insurance, maintenance, and utilities—and the costs of elective "added security." FAC ¶¶ 59, 63–64. These costs exist with or without HCM status, are standard burdens of property ownership, and do not constitute an impact of the regulation itself. Furthermore, Plaintiffs' claim that the house is "unrentable" without "hundreds of thousands of dollars" in repairs, *id.* ¶¶ 48, 64, in fact acknowledges that the property *retains* economic viability if maintained. The Fifth Amendment does not require the government to guarantee the profitability of a private investment or to indemnify owners for the costs of bringing a "dilapidated" structure up to code. Because the FAC fails to allege that the City's designation has rendered the subject Property incapable of *any* beneficial use, the economic impact prong is unsatisfied. *See Colony Cove Props.*; *Lucas*, 505 U.S. at 1019, n. 8; *William C. Haas & Co.*, 605 F.2d 1120; *Hadacheck*, 239 U.S. 405.

Moreover, as the Court noted in its original decision dismissing the Complaint, "Plaintiffs do not allege they have made an attempt to sell the Property. Nor do they allege they have attempted to perform repairs or maintenance needed to return the Property to a habitable state, or that the City could or would prevent them from doing so." *Milstein*, 2026 WL 1270751, *7. This remains true for the FAC's allegations, and the suit should be dismissed without leave to amend.

    **2.**     **The FAC Should Be Dismissed Because, Failing the Second *Penn Central* Factor, Plaintiffs Allege Only a Unilateral Expectation of the Property's Demolition without Application of the City's Code.**

The second factor in the *Penn Central* analysis requires the Court to examine the "extent to which the regulation has interfered with distinct investment-backed expectations." *Penn Central,* 438 U.S. at 124. To state a claim, a plaintiff's expectations must be more than a "unilateral expectation or an abstract need"; they must be "objectively reasonable." *Ruckelshaus,* 467 U.S. at 1005-06 (disposing of takings claim solely on absence of reasonable investment-backed expectations). *Penn Central*

21

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

defines the "primary expectation concerning use of the parcel" as the "present uses" of a property. *Penn Central*, 438 U.S. 104 at 136. Plaintiffs' claim fails here because their alleged expectation of demolition without application of the CHO's process was not reasonable in light of the Property's historical profile and the existing regulatory landscape.

Importantly, as this Court noted, "[t]he expectation that a 'property will be continually unencumbered by governmental regulation' is unreasonable. *Rancho de Calistoga*, 800 F.3d at 1090; *see also id.* at 1091 ('Simply put, when buying a piece of property, one cannot reasonably expect that property to be free of governmental regulation such as zoning, tax assessments, or, as here, rent control.')." *Milstein*, 2026 WL 1270751, *8.

Plaintiffs allege they purchased the Property with the specific "intent to demolish the dilapidated structures." FAC ¶ 30. However, the purchased use of the property was a home and it remains a home even with HCM status. *Penn Central*, 438 U.S. at 136. Moreover, a purchaser's subjective intent for a property does not bind the government or create a distinct expectation that overrides a valid exercise of police power. *Rancho de Calistoga*, 800 F.3d at 1090; *see also Murr v. Wisconsin*, 582 U.S. 383, 405 (2017) ("Petitioners cannot claim that they reasonably expected to sell or develop their lots separately given the regulations which predated their acquisition of both lots"). The mere fact that Plaintiffs applied for demolition permits concurrently with their purchase, FAC ¶ 32, does not grant them a vested right to those permits, nor does it render a subsequent historical designation a taking. The Fifth Amendment "is not a panacea for less-than-perfect investment or business opportunities." *Penn Central*, 438 U.S. at 549.

Moreover, the existing regulatory environment precluded any reasonable expectation of unfettered development. Plaintiffs were explicitly notified at the time of purchase of the connection of the Property to Ms. Monroe, the potential for the City to designate the Property as an HCM under its existing Cultural Heritage Ordinance, and

22

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

the Property's history of tourists visiting and ringing the doorbell.  City's RJN, Ex. 1 at 15.  Plaintiffs further assert that City ordinances already required permits for structures over forty-five years old to be "held" for thirty days to allow for preservation objections.  FAC ¶ 35.  Because Plaintiffs could have anticipated the possibility of a historic designation for the Monroe Residence, their claim that designation frustrated "distinct investment—backed expectations" is not—and was not—objectively reasonable and must be rejected.  *See Guggenheim v. City of Goleta*, 638 F.3d 1111, 1120–21 (9th Cir. 2010).  Therefore, Plaintiffs' taking claim fails the second *Penn Central* factor.

### 3. The Third Penn Central Factor Weighs in Favor of Dismissal Because the City's Designation Served an Important Public Interest in Historic Preservation.

The final factor in the *Penn Central* analysis is the "character of the governmental action," *Penn Central*, 438 U.S. at 123–24, and "considers whether a government action 'amounts to a physical invasion or instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good.'  *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1121 (9th Cir. 2010) (internal quotations omitted)."  *Milstein*, 2026 WL 1270751, *8.  In *Penn Central*, the Supreme Court explicitly recognized that "historic conservation" is a legitimate public goal and that "the character and desirable aesthetic features of a city" are the types of land-use restrictions the City may enact.  *Penn Central*, 438 U.S. at 129.

Here, designating the Property for its connection with a globally-recognized cultural icon falls squarely within this permissible exercise of authority recognized by *Penn Central*, and the City's designation of the Property as an HCM is a classic exercise of the police power for a valid public purpose, not a compensable taking.

First, Plaintiffs implausibly attempt to allege that the designation is simultaneously a "physical taking" that "induced members of the public to invade Plaintiff's Property," FAC ¶¶ 70, 73, and that the house on the Property nevertheless "is

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

not visible from any public thoroughfare." FAC ¶¶ 1, 41. The City has not authorized any physical occupation of the Property, nor has it granted the public a right of access. *See supra* IV.A. The independent, illegal acts of third-party trespassers do not transform a historical preservation ordinance into a government-authorized physical invasion. Indeed, *Cedar Point* recognizes this distinction. 594 U.S. at 149 (distinguishing between government-authorized access for itself or third-parties and mere regulatory restrictions on a property owner's ability to use his own property).

Next, the "public benefit" of historic preservation is served, not by giving members of the public the right to walk through the front door, but rather by the continued existence of the Property for the community's cultural and historical identity. While Plaintiffs claim that prior to designation there was "rarely" trespassing, FAC ¶ 68, and that "public invasion" of the Property was foreseeable and induced by HCM designation, FAC ¶¶ 69–71, this is belied by the property disclosures the prior seller made and the history of the City's CHO, which has existed since 1962 without incident.

Finally, the character of the HCM designation is not acquisitive. The City did not take the Property for its own use (such as a park or a highway), it is not transferring the Property to a third party, and it is not seeking to engage in these acts. Instead, the City applied a generally-applicable ordinance intended to protect and preserve the City's heritage. *See* FAC ¶¶ 79; City's RJN, Ex. 2 at 1 (LAAC § 22.171: expressing Cultural Heritage Commission's purpose to preserve "sites, buildings or structures that embody the heritage, history and culture of the City"). While Plaintiffs may feel the burden of this designation is heavy, the law is clear: "Legislation designed to promote the general welfare commonly burdens some more than others." *Penn Central*, 438 U.S. at 133. Because the City's action is a widespread regulatory program aimed at cultural preservation, its "character" weighs heavily against a finding of a taking.

Because all three *Penn Central* factors confirm that the City's designation of the Property was not a regulatory taking, the FAC should be dismissed.

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

**C.** **Plaintiffs' Claims of Alleged Harm By Third Parties Do Not Create a Basis for Municipal Liability.**

**1.** **Plaintiffs Have Not Alleged an Official Municipal Policy or Custom that Was the "Moving Force" Behind Their Alleged Harm.**

Plaintiffs' attempt to hold the City liable for the "tourists," "burglar[s]," and "trespass[ers]" allegedly attracted to the Property after its designation likewise must be dismissed for failure to allege a direct causal link to a City policy. FAC ¶¶ 6, 31, 42, 57, 59, 61-62, 68. Under *Monell v. Department of Social Services*, 438 U.S. 658 (1978), a municipality is not liable for every incidental effect of its actions; rather, a plaintiff must prove that a specific municipal policy—not the independent, criminal acts of third parties—was the "moving force" behind a constitutional violation. *Id.* at 694. The "moving force" requirement is a "stringent standard of fault," requiring that the municipal action be taken with "deliberate indifference" to its known or obvious consequences. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404, 410 (1997).

Here, Plaintiffs cannot meet this "stringent standard" because the City's "policy"—the HCM designation—is a quasi-legislative act intended to serve a valid public purpose: preserving the heritage of Los Angeles. City's RJN, Ex. 1 at 4-8. Though framed here as a "taking," Plaintiffs' own allegations establish that the purported "invasions" of the Property are the result of independent criminal acts by third parties, such as scaling walls or burglarizing the home. FAC ¶¶ 1, 6, 31, 42, 57, 59, 60, 62, 68–71. Because the City did not authorize or encourage the illegal acts of trespassers, and actively sends police officers to Plaintiffs' Property to address the harm, there is no "direct causal link" between the designation and the criminal conduct of third parties.[5] Indeed, the sellers of the home recognized the issue as being

---

[5]  Nor can Plaintiffs bypass *Monell*'s causation requirements by invoking the narrow "state-created danger" doctrine. To prevail under this exception, a plaintiff must prove that the state affirmatively placed them in a position of danger they would not have otherwise faced by acting with "deliberate indifference" to a "known or obvious" danger." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006).

25

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

significant enough to disclose to Plaintiffs prior to selling the Property.  City's RJN Ex. 1, at 15.

In short, taking Plaintiffs' allegations as true, the "moving force" behind their alleged harm is not the City's ordinance, but the independent decisions of private citizens to violate California's trespass and privacy laws.  The City's recognition of the Property's historical significance does not grant the public a license to enter the premises, nor does it strip Plaintiffs of their right to exclude others from the Property.

### 2.   Section 1983 Claims Cannot Be Based on Harms by Private Actors.

Moreover, a municipality's "failure to prevent harm inflicted by a private actor does not give rise to a cause of action under section 1983."  *Garcia v. Superior Court*, 50 Cal. 3d 728, 739 (1990) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)).  In *Garcia*, the California Supreme Court rejected a Section 1983 claim against a parole officer whose parolee committed murder, holding that the officer's assurances to the victim did not create liability.  The Court reasoned that there was no Section 1983 state action because the victim remained free to protect herself and the state left her "in the same position as before."  *Id.* at 740–41.  The Court further reasoned that the "plaintiffs appear to be proceeding under the incorrect assumption that section 1983 simply federalizes all tort claims against state actors."  *Id.* at 738.

As in *Garcia*, Plaintiffs' taking claims brought under Section 1983 rely on the theory that the City has failed to prevent harm inflicted by third parties—the burglars, tourists, and trespassers who allegedly visit the neighborhood.  FAC ¶¶ 6, 31, 42, 57, 59, 60, 62, 68–71.  And like *Garcia*, Plaintiffs' Section 1983 claims must be dismissed

---

This doctrine is inapplicable here because the "danger"—the public's interest in Marilyn Monroe's final home—preexisted any City action.  The City's designation did not "create or increase a known or obvious danger to [Plaintiffs] that [they] would not otherwise face" (*id.* at 1067); it merely acknowledged a historical fact that was a matter of public record long before Plaintiffs purchased the Property.

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

because the City is not constitutionally liable for actual or potential harms inflicted by private actors over whom the City exercises no control.

**D. Plaintiffs' Takings Claims Are Unripe for Judicial Review Because: (1) Plaintiffs' Demolition Permit Was Not Revoked; (2) Plaintiffs Have Not Applied to Demolish, Substantially Alter, or Relocate the Property; and (3) Plaintiffs Have Not Applied to Develop the Property.**

**1. Because No Physical Taking Occurred Here, the Court Should Analyze the Ripeness of Plaintiffs' Claims.**

As this Court noted in its decision dismissing the initial Complaint, "the final decision rule does not apply to a physical takings claim." *Milstein*, 2026 WL 1270751, at *6 n. 6. However, as explained above in Section IV.A, no physical taking has occurred here. Additionally, while the Court previously found that the HCM designation satisfies the finality requirement, *id.* at *6, the City respectfully submits that finality should be analyzed as to the City's denial of a permit application. And, here, Plaintiffs have not submitted *even one* application. Consequently, because Plaintiffs have never applied, there has been no final decision regarding any proposed development, remodel, relocation, substantial alteration, or demolition.

**2. Plaintiffs' Claims Are Not Ripe Because while the HCM Status Is Final, Plaintiffs Have Not Submitted Even One Application to Alter the Property.**

Plaintiffs' regulatory taking claims must be dismissed because they are unripe for judicial review. A takings claim "is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Township of Scott*, 588 U.S. 180, 187-88 (2019) (Court specifically not questioning the validity of the finality requirement); *see also Pakdel v. City and County of San Francisco*, 594 U.S. 474, 478 (2021) ("a plaintiff's failure to properly pursue administrative procedures may render a claim unripe *if* avenues still remain for the government to clarify or change a decision") (emphasis in original).

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

Here, Plaintiffs make contradictory claims, simultaneously asserting an inability to use the single-family home they purchased and a lack of desire to do so.  FAC ¶¶ 28–30, 54, 65, 83.  The conclusory claims of worthlessness lack plausibility and are belied by the Plaintiffs' own allegations and the plain text of the City's Administrative Code.  Indeed, the FAC fails to allege a final, definitive position from the City—let alone *any* attempts by Plaintiffs to obtain such a position—that would allow this Court to evaluate the economic impact of the HCM designation.  Although Plaintiffs state they offered to relocate the home, FAC ¶ 45, a *permit* is required to relocate a building, and Plaintiffs *never applied* to relocate the Property.  *See* FAC; LAMC § 91.106.1.1.  Because the City cannot simply act on every speculative idea proposed by a member of the public, an actual application must be filed for approval or disapproval of development or relocation or construction; Plaintiffs have made no such application.

### 3. Plaintiffs' Pursuit of Their State Court Appeal Puts the Ultimate Property Status in Flux and It Is Not Final.

Plaintiffs admitted in the initial complaint that the Superior Court denied their writ petition challenging the HCM designation on September 2, 2025, but left out that they were pursuing an appeal of that state court decision.  Dkt. No. 1 ¶ 10; *see also* RJN Ex. 7.  Until that appeal is concluded, there is no finality regarding the validity of the designation itself, let alone its ultimate impact on the Property's use.[6]

### 4. Plaintiffs' Demolition Permit Was Not Revoked; Instead, a Stay Was Placed on the Permit Until Such Time as Plaintiffs Pursue, and Are Granted, Alternative Relief.

The "final decision" requirement ensures that a court does not guess at how a regulation will be applied.  *Williamson Cty.*, 473 U.S. at 190-91; *see also MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 348 (1986) ("A court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes.").  Plaintiffs falsely claim the City "terminated" and "revoked" their 2023 demolition and

---

[6]   The Court of Appeal reinstated Plaintiffs' appeal on March 20, 2026.

28

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

grading permits, FAC ¶¶ 5, 18, 39, 47, 78, but these assertions are flatly refuted by Plaintiffs' simultaneous allegations that the City merely issued an "intent to revoke" the permits.  FAC ¶¶ 38, 77.  By failing to allege otherwise, Plaintiffs effectively concede that they have not applied for any extensions of the applied-for permits, have not applied for any other permits, and have not been denied any permits—including under the regulatory framework following the HCM designation.  *See* LAAC §22.171 *et seq.*; see also City's RJN, Ex. 8 (Permit and Inspection Report for Demolition Permit No. 23019-30000-03126) and Ex. 9 (Permit and Inspection Report for Grading Permit No. 23030-30000-04877).

Indeed, Plaintiffs' initial Complaint similarly conceded that the City's ordinance allows for "demolition, substantial alteration or relocation" of an HCM upon review by the CHC. Dkt. 1, Compl. ¶¶ 65-66.  Yet, despite discussing the procedures at length, Plaintiffs did not (because they could not) allege that they:

- filed an application to reinstate the demolition permit notwithstanding the HCM designation (*id.* ¶ 51);
- sought to alter the existing structures (*id.* ¶¶ 65-66);
- applied for a relocation permit to move the house to an alternative site (*id.* ¶¶ 9, 92); or
- explored maintenance of the roof or structure, or any alternative development options, such as the 10,000-square-foot house they allege the zoning would otherwise permit.  *Id.* ¶ 78.

Plaintiffs have simply not sought a final determination under the existing regulatory process and, therefore, their claims are premature and fail to satisfy the ripeness requirement.  *See Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 297 (1981) (rejecting claim that the Surface Mining Control and Reclamation Act of 1977 effected a taking because the developer had not requested either a variance from requirements of that act or a waiver from its surface mining

29

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

restrictions); *Agins v. Tiburon*, 447 U.S. 255, 260 (1980) ("Because the appellants have not submitted a plan for development of their property as the ordinances permit, there is as yet no concrete controversy regarding the application of the specific zoning provisions."); *Penn Central*, 438 U.S. at 136–37 (rejecting claim that application of New York City's Landmarks Preservation Law to Grand Central Terminal effected a taking because, although the city had disapproved a plan for a 50-story office building above the terminal, property owners had not sought approval for any other plan).

### 5.    Plaintiffs' Alleged Harms Are Purely Speculative.

As explained herein, none of Plaintiffs' permits have been formally rejected. Instead, Plaintiffs have failed to seek the resuscitation of their demolition permit, maintain the Property, or apply to remodel, enlarge, develop, or relocate the Property. The only operative action to date is the City's designation of HCM status.

The City has not rejected *a single one* of Plaintiffs' applications for development, relocation, or alteration for the simple reason that Plaintiffs have submitted no applications. Therefore, the City has not yet applied its regulations in a manner that creates a ripe controversy. Because the City may still permit significant development, alterations, relocation, or even demolition, the extent of Plaintiffs' alleged harms remains unknown. *Williamson Cty.*, 473 U.S. at 191 ("[U]ntil the Commission determines that no variances will be granted, it is impossible … to find … whether respondent will be unable to derive economic benefit from the land.") (quotations omitted); *see also Pakdel*, 594 U.S. at 480 (noting the finality requirement "ensures that a plaintiff has actually 'been injured by the Government's action' and is not prematurely suing over a hypothetical harm") (quoting *Horne v. Dep't of Agric.*, 569 U.S. 513, 525 (2013)).

For these reasons, Plaintiffs' takings claims are not ripe for this Court's review.

30

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

**E.    Plaintiffs' Takings Claims Also Fail Because Developers Are Required to Comply with City Code and Minor Delays in Permitting Do Not Constitute a Taking.**

As explained herein, Plaintiffs' takings claim is based upon the upon the false premise that their permits were "terminated" or "revoked."  Therefore, Plaintiffs' cause of action is not satisfied by its own allegations.  *Lucas*, 505 U.S. at 1015 (taking occurs where regulation denies all economically beneficial or productive use of land); *Tahoe-Sierra*, 535 U.S. at 337 (land use moratoria causing 32-month delay not a per se taking).  Absent permit denial, "only an extraordinary delay in the permitting process can give rise to a compensable taking."  *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1349–50 (Fed. Cir. 2002) (affirming dismissal); *Wyatt v. United States*, 271 F.3d 1090, 1098 (Fed. Cir. 2001) (seven-year delay not a taking); *Dufau v. United States*, 22 Cl. Ct. 156, 163 (Cl. Ct. 1990) (holding that permit delay of sixteen months did not constitute a temporary taking).  Courts are unlikely to "find a taking based on extraordinary delay without a concomitant showing of bad faith."  *Cooley v. United States*, 324 F.3d 1297, 1307 (2003); *Wyatt*, 271 F.3d at 1098.  Delay, of course, "is inherent in complex regulatory permitting schemes," and courts must examine the nature of the permitting process as well as the reasons for delay."  *Wyatt*, 271 F.3d at 1098.  Moreover, the City's own CHO sets forth an explicit timeline within which the City must act.  LAAC § 22.171.15. Accordingly, Plaintiffs claims fail.

**V.    CONCLUSION**

For the foregoing reasons, the City asks the Court to dismiss Plaintiffs' FAC without leave to amend.

Dated: July 17, 2026         **OFFICE OF THE LOS ANGELES CITY ATTORNEY**

By: */s/ Matthew T. Meehan*
**MATTHEW T. MEEHAN**, Deputy City Atty.
*Attorneys for Defendant*
CITY OF LOS ANGELES

31

**CITY OF LOS ANGELES'S MOTION TO DISMISS**

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants, certifies that this brief contains of 8,458 words, which complies with the page limit of 25 pages set by the Court's Standing Order court filed in this action on January 27, 2026.

Dated: July 17, 2026

HYDEE FELDSTEIN SOTO, City Attorney
JOHN W. HEATH, Chief Assistant City Atty.
DONNA WONG, Assistant City Attorney
CHARLES D. SEWELL, Assistant City Atty.
K. LUCY ATWOOD, Deputy City Attorney
RYAN BORHO, Deputy City Attorney
MATTHEW T. MEEHAN, Deputy City Atty.

By: */s/ Matthew T. Meehan*
**MATTHEW T. MEEHAN,** Deputy City Atty.

*Attorneys for Defendant*
CITY OF LOS ANGELES

32

**CITY OF LOS ANGELES'S MOTION TO DISMISS**