UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 26-747 PA (MBKx) | Date | September 28, 2026 |
| Title | Brinah Milstein, et al. v. City of Los Angeles, et al. | | |

| | |
|---|---|
| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Kamilla Sali-Suleyman | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:** **IN CHAMBERS — COURT ORDER**

Before the Court is a Motion to Dismiss filed by defendant City of Los Angeles (the "City" or "Defendant"). (Docket No. 41 ("Motion").)[1/] Defendant challenges the sufficiency of the First Amended Complaint ("FAC") filed by Plaintiffs Brinah Milstein, individually and as Trustee of Glory of the Snow 1031 Trust, and Roy Bank (collectively, "Plaintiffs"). The Motion is fully briefed. (Docket Nos. 42, 43.) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing set for September 28, 2026, was previously vacated, and the matter taken off calendar.

## I. Factual and Procedural Background

This action concerns a single-family residential property on Fifth Helena Drive in Los Angeles (the "Property"), which previously belonged to Marilyn Monroe for about six months in 1962 before she died at the Property. (See FAC ¶ 2.) Plaintiffs live adjacent to the Property, which is situated at the end of a short, narrow, dead-end residential street. (See id. ¶¶ 11, 22.) According to the FAC, in the decades since Ms. Monroe's death, the house located on the Property has been substantially altered by successive owners, with no opposition from the City. (See id. ¶¶ 26-27.) The house on the Property has been unoccupied since late 2019 and, although it is structurally sound, large segments of the roof are missing, the house leaks, and other elements of the house are in disrepair or nonfunctional. (See id. ¶ 28.) The cost to repair the house to a habitable state is approximately $700,000. (See id. ¶ 29.)

[1/] The FAC names both the City and Karen Bass, in her official capacity as Mayor of Los Angeles, as defendants (jointly "Defendants"). The City indicates that its Motion is brought on behalf of the City as a whole, including the Mayor in her official capacity.

Plaintiffs purchased the Property in July 2023 for $8.35 million, with the intent to clear the Property and make way for alternative uses. (See id. ¶¶ 23, 30.) The City's code requires a 30-day preservation hold on permits for any property more than 45 years old – a process that exists to allow the City and other interested parties to raise objections before any permits become final. (See id. ¶ 35; LAAC § 22.171.12.) No one objected during that period to the issuance of the grading and demolition permits on historical monument grounds or otherwise, and the City issued the permits on September 7, 2023, after the 30-day hold expired. (Id. ¶ 34.) Plaintiffs allege that they spent $30,000 in construction-related costs in anticipation of clearing the old buildings. (Id. ¶ 34.)

However, on September 8, 2023, the City Council approved a motion to designate the Property a Historic-Cultural Monument ("HCM"), pursuant to Los Angeles Administrative Code §§ 22.171.8–22.171.10, which initiated the process to consider a HCM designation for the Property. (Id. ¶ 36.)[2/] The City then sent a written notice to Plaintiffs to stop construction work, declaring the City's "intent to revoke" the building permits. (Id. ¶ 38.)

On January 18, 2024, the City's Cultural Heritage Commission formally recommended designating the Property as a HCM. (Id. ¶ 40.) Plaintiffs then sent a letter to the City Council's Planning and Land Use Management Committee, where the designation process would continue. The letter stated that the house is not visible from the street and that the designation process had instigated trespassing. (Id. ¶¶ 41-42.) The Planning and Land Use Management Committee approved the recommendation, which sent the issue to the City Council. (Id. ¶ 43.) Plaintiffs allege that they offered to work with the City to relocate the house to another location but the City "rebuffed Plaintiffs' overtures." (Id. ¶ 45.) On June 26, 2024, the City Council approved the HCM designation. (Id. ¶ 44.) Plaintiffs allege that, as a result of the HCM designation, "the building permits previously issued to Plaintiffs were terminated and extinguished." (Id. ¶ 47.)

According to the FAC, because of the HCM designation, Plaintiffs cannot demolish the Property. (Id. ¶ 49.) Plaintiffs also allege the HCM designation has substantially devalued the Property. (Id. ¶ 50.) They allege that, with the HCM designation, the Property is now worth $820,000 but that, without the designation, it would currently be worth $9 million. (Id. ¶¶ 52-53.) They also allege that, if the Property were free of the designation and were demolished and

---

[2/] Plaintiffs allege that the same City Councilmember who introduced the motion through a press conference also drew attention to the Property by making TikTok videos on the street outside the Property after the motion was adopted, all while dressed as Ms. Monroe. (See id. ¶¶ 36–37.)

replaced with a 10,000-square-foot modern home in its place, it would be worth $17 million. (Id. ¶ 54.)

Plaintiffs allege that the HCM designation has turned the Property "into a tourist attraction." (Id. ¶¶ 57, 84.) Following the designation, numerous people have flown drones over the Property, trespassed or attempted to trespass on the Property, and burglarized or attempted to burglarize the Property. (Id. ¶ 59.) In particular, the FAC describes a burglary on November 7, 2025, where individuals scaled the wall on the Property and broke into the house, forcing Plaintiffs to call the police. (See id. ¶ 59.) Plaintiffs allege that as a result of these incidents, they have been forced to pay hundreds of thousands of dollars for multiple levels of added security measures. (See id. ¶¶ 59, 63.) Plaintiffs allege that invasions were not happening prior to the City's HCM designation process. (Id. ¶ 60.) Plaintiffs also allege that the Property is not rentable because of its deteriorated condition and security risks, though they "do not want to be landlords and did not invest in the Property as a rental property." (Id. ¶¶ 64-65.)

Plaintiffs previously challenged the lawfulness of the HCM designation via a writ petition filed in Los Angeles County Superior Court (the "State Court Action").[3/] On September 2, 2025, the Superior Court denied the writ petition. Plaintiffs appealed that ruling. Plaintiffs then initiated this action on January 23, 2026. On May 6, 2026, the Court granted Defendant's motion to dismiss Plaintiffs' complaint and granted Plaintiffs leave to amend. (Docket No. 34.) Plaintiffs filed their FAC on May 26, 2026. The FAC alleges claims pursuant to 42 U.S.C. § 1983 for violation of the Fifth Amendment's Takings Clause. Plaintiffs seek injunctive relief and compensation in the amount of the present value of their 2023 investment in the Property. The City moves to dismiss the FAC on behalf of both Defendants pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II. Legal Standard

### A. Rule 12(b)(1)

Under Rule 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction" and "[i]t is to be presumed that a cause lies outside this limited jurisdiction," unless otherwise shown. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673 (1994). Plaintiffs, as the party seeking to invoke jurisdiction, has the burden of establishing that jurisdiction exists. Id.

[3/] Plaintiffs did not raise any Takings Clause claims in the State Court Action.

Because ripeness "pertain[s] to federal courts' subject matter jurisdiction" it is "properly raised in a Rule 12(b)(1) motion to dismiss." Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010). The Ninth Circuit has recognized that "in many cases, ripeness coincides squarely with standing's injury in fact prong." Thomas v. Anchorage Equal Rts. Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000); see also Friends of the Earth, Inc. v. Laidlaw Envt'l Srvs. (TOC), Inc., 528 U.S. 167, 180–81, 120 S. Ct. 693 (2000) (explaining that to satisfy Article III's "injury in fact" requirement, a plaintiff must show that the injury is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical") (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130 (1992)). "A dispute is ripe in the constitutional sense if it 'present[s] concrete legal issues, presented in actual cases, not abstractions.'" Montana Envt'l Info. Ctr. v. Stone-Manning, 766 F.3d 1184, 1188 (9th Cir. 2014) (quoting Colwell v. HHS, 558 F.3d 1112, 1123 (9th Cir. 2009)).

### B. Rule 12(b)(6)

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937 (2009).

Rule 15 requires that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." Eminence Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). "A district court acts within its discretion to deny leave to amend when amendment would be futile . . . ." Doe v. Garland, 17 F.4th 941, 950 (9th Cir. 2021) (quoting Chappel v. Lab. Corp. of Am., 232 F.3d 719, 725-26 (9th Cir. 2000)). "Although leave to amend should be liberally granted, the amended complaint may only allege 'other facts consistent with the challenged pleading.'" Reddy v. Litton Indus., Inc., 912 F.2d 291, 296–97 (9th Cir. 1990) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986)).

## III. Judicial Notice

In support of its Motion, the City asks the Court to take judicial notice of the following documents:

1. The Order Denying Petition for Writ of Mandate in the State Court Action, dated September 2, 2025 (Ex. 1);

2. City of Los Angeles' Cultural Heritage Commission Ordinance, Los Angeles Administrative Code Section 22.171 et seq. (Ex. 2);

3. The Los Angeles City Council Motion in Council File No. 23-0953 regarding the Property, dated September 8, 2023 (Ex. 3);

4. The Official Action of City Council, Council File No. 23-0953, regarding the continued consideration of categorical exemption and planning and land use management committee report relative to the inclusion of Marilyn Monroe Residence in the Historic-Cultural Monuments, dated June 26, 2024 (Ex. 4);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 26-747 PA (MBKx) | Date | September 28, 2026 |
|---|---|---|---|
| Title | Brinah Milstein, et al. v. City of Los Angeles, et al. | | |

5. The Report of the Planning and Land Use Management Committee, Council File No. 23-0953, dated March 5, 2024 (Ex. 5);

6. The Judgment in the State Court Action, dated September 22, 2025 (Ex. 6);

7. Plaintiffs' Notice of Appeal filed in the State Court Action, dated October 31, 2025 (Ex. 7);

8. The Permit and Inspection Report for Demolition Permit No. 23019-30000-03126 (Ex. 8);

9. The Permit and Inspection Report for Grading Permit No. 23030-30000-04877 (Ex. 9);

10. The Order Denying Motion for Preliminary Injunction in the State Court Case, dated June 4, 2024 (Ex. 10); and

11. Federal Reserve Economic Data (FRED) at St. Louis Fed: Housing Inventory: Median Listing Price in Los Angeles County, CA; Housing Inventory: Median Home Size in Square Feet in Los Angeles County, CA (Ex. 11).

(Docket No. 41-3 ("RJN").) Plaintiffs did not oppose Defendant's RJN.

Under Rule 201, a court "may judicially notice a fact that is not subject to reasonable dispute because it" either (1) "is generally known within the trial court's territorial jurisdiction," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may take judicial notice of its own files and of documents filed in other courts. Reyn's Pasta Bella, LLC v. Vista USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006). In addition, a court may take judicial notice of "matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

Here, Exhibits 1, 6, 7, and 10 are rulings and filings from the State Court Action, Exhibit 2 is a municipal ordinance, Exhibits 3–5 are official reports from the Los Angeles City Council, and Exhibits 8-9 are records of the Los Angeles Department of Building and Safety available on the City's Official Website. Each of these exhibits is a matter of public record and is a proper subject for judicial notice. See Lee, 250 F.3d at 689; Tollis, Inc. v. County of San Diego, 505 F.3d 935, 938 n. 1 (9th Cir. 2007) ("Municipal ordinances are proper subjects for judicial

notice”). Moreover, Plaintiffs do not dispute the Court’s ability to take judicial notice of these documents. Accordingly, to the extent the Court relies on the RJN Exhibits in this Order, Defendant’s RJN is granted; the RJN is otherwise denied as moot.[4/]

## IV. Analysis

Plaintiffs’ FAC alleges violations of the Takings Clause of the Fifth Amendment. The Takings Clause prohibits the federal government, as well as state and local governments, from taking private property for public use without paying just compensation. See U.S. Const. amend. V; Schneider v. California Dep’t of Corr., 151 F.3d 1194, 1198 (9th Cir. 1998) (“[T]he Takings Clause has long been held to apply to the States through the Due Process Clause of the Fourteenth Amendment.”). “A person who has suffered a taking at the hands of a local government may bring a claim in federal court under 42 U.S.C. § 1983 to obtain just compensation.” Ballinger v. City of Oakland, 398 F. Supp. 3d 560, 567 (N.D. Cal. 2019).

“The Supreme Court has recognized two broad categories of takings: physical takings and regulatory takings.” Pakdel v. City & Cnty. of San Francisco, 636 F. Supp. 3d 1065, 1071 (N.D. Cal. 2022). Here, Plaintiffs allege both categories of takings. The City argues that the FAC fails to allege a physical or regulatory taking, that Plaintiffs’ regulatory takings claim is unripe for judicial review, and that Plaintiffs’ allegations of harm by third parties do not suffice to establish municipal liability.

### A. Physical Taking

---

[4/] The City’s Exhibit 11 is a copy of Federal Reserve Economic Data (FRED) at St. Louis Fed, which it uses to dispute Plaintiffs’ allegation of the current value of the Property. The Court does not consider this exhibit in its analysis and denies the request as to this exhibit as moot. The City also filed a second RJN with its Reply, asking the Court to take judicial notice of additional records from the City of Los Angeles Official Website regarding the status of permits for other properties within the City. (Docket No. 43-1.) Because, as discussed further below, the City offers these records for the first time in reply, in support of arguments raised improperly for the first time in reply and to ask the Court to resolve factual disputes at the pleadings stage, the Court does not consider those arguments and therefore denies the City’s Second RJN. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) (“The district court need not consider arguments raised for the first time in a reply brief.”); Lee, 250 F.3d at 689 (“[A] court may not take judicial notice of a fact that is ‘subject to reasonable dispute.’”).

A physical taking occurs when the government "has physically taken property for itself or someone else – by whatever means . . . ." Cedar Point Nursery v. Hassid, 594 U.S. 139, 149, 141 S. Ct. 2063 (2021). A physical taking can occur when the government "uses its power of eminent domain to formally condemn property," or when the government "physically takes possession of property without acquiring title to it." Id. at 147. Further, the Supreme Court has recognized that "government-authorized invasions of property—whether by plane, boat, cable, or beachcomber—are physical takings requiring just compensation." Id. at 152. For physical takings, a court assesses the appropriation "using a simple, *per se* rule: The government must pay for what it takes." Id. at 148.

Here, much like in their earlier complaint, Plaintiffs allege that by designating the Property as a HCM, the City has "induced members of the public to invade Plaintiffs' property" and "[t]he City's actions are 'the moving force' behind the ongoing public invasion of Plaintiffs' Property." (FAC ¶¶ 70-71.) The City argues that the FAC fails to plausibly allege a physical taking because the HCM designation does not authorize or encourage invasions of the Property and because the City cannot be held liable for the actions of third parties under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 660, 98 S. Ct. 2018, 2020 (1978). Plaintiffs argue Monell does not apply because they are not alleging that a government employee violated their constitutional rights. (Opp'n at 23-24.) They urge, instead, for the application of the test applied in Ridge Line, Inc. v. United States, 346 F.3d 1346, 1355 (Fed. Cir. 2003) and other Federal Circuit cases. However, Plaintiffs' proffered test is used to determine government liability for takings claims arising from flooding, railroad easements, or groundwater contamination. (See Opp'n at 21-22.) Plaintiffs point to no authority imposing liability on the government based on the actions of third parties. Moreover, Plaintiffs' authority is not binding on this Court.

The FAC remains devoid of allegations of any action by the City authorizing or encouraging members of the public to access the Property itself. And Plaintiffs do not allege that the City has refused to enforce or prevented Plaintiffs from enforcing their rights against individuals who trespass on the Property. Thus, while Plaintiffs claim that their property is being invaded by members of the public *as a result of* the HCM designation, the FAC fails to plausibly allege any *government-authorized* invasion of the Property and thus fails to state a physical takings claim. See 3Pak LLC v. City of Seattle, 174 F.4th 1180, 1190 (9th Cir. 2026) (concluding plaintiffs failed to establish per se physical taking based on city's decision not to police or intervene in protests, explaining that plaintiffs failed to allege any affirmative government invasion of plaintiffs' own property or that any alleged unlawful entry onto property by third parties was the "result of any intentional acts by the government"); Fox v. City of Pac. Grove, California, 810 F. Supp. 3d 1065, 1073 (N.D. Cal. 2025) (finding plaintiff failed to allege

physical takings claim where city government's use restriction "did not authorize the government or any other person or object to enter and occupy [the plaintiff's] property"). Accordingly, this claim must be dismissed.

**B. Regulatory Taking**

A regulatory taking occurs when the government, "rather than appropriating private property for itself or a third party, instead imposes regulations that restrict an owner's ability to use his own property . . . ." Cedar Point, 594 U.S. at 147; see Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1018, 112 S. Ct. 2886 (1992) ("[R]egulations that leave the owner of land without economically beneficial or productive options for its use . . . carry with them a heightened risk that private property is being pressed into some form of public service under the guise of mitigating serious public harm."). Plaintiffs characterize the City's HCM designation of the Property as a regulatory taking. (See FAC ¶ 89.)

1. Ripeness

"When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a 'final' decision." Pakdel v. City & Cnty. of San Francisco, California, 594 U.S. 474, 475, 141 S. Ct. 2226 (2021) (quoting Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 737, 117 S. Ct. 1659 (1997)); see Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186, 105 S. Ct. 3108 (1985), overruled on other grounds by Knick v. Township of Scott, 588 U.S. 180, 187–88 (2019) (a regulatory takings claim challenging a restriction on private property is generally not ripe until "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."). "The finality requirement is relatively modest. All a plaintiff must show is that 'there [is] no question . . . about how the 'regulations at issue apply to the particular land in question.'" Pakdel, 594 U.S. at 478 (citation omitted).

Here, the City again argues that Plaintiffs' regulatory takings claim is unripe because there has been no final decision regarding the Property's permitted use.[5/] In particular, the City

---

[5/] While the City also appears to suggest in its briefs that both of Plaintiffs' takings claims are unripe, the City offers no supporting argument concerning Plaintiffs' alleged physical takings claim. Moreover, the City admits that the final decision rule does not apply to a physical takings claim. See Vacation Village, Inc. v. Clark County, 497 F.3d 902, 912 (9th Cir. 2007) ("[A] final

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 26-747 PA (MBKx) | Date | September 28, 2026 |
|---|---|---|---|
| Title | Brinah Milstein, et al. v. City of Los Angeles, et al. | | |

argues that the state of the Property is in flux due to the ongoing State Court Action. The City also argues that Plaintiffs have not obtained a final decision because they have not reapplied for a demolition permit and have not applied for any other specific development, relocation, or alteration permit. The City also asserts that "Plaintiffs falsely claim the City 'terminated' and 'revoked' their 2023 demolition and grading permits" and claims that the demolition and grading permits were merely stayed through an "intent to revoke." Plaintiffs argue that the City does not challenge the Court's previous conclusion that the City's decision to designate the Property as a HCM constitutes a final decision. Plaintiffs also argue that, contrary to the City's claim, they have adequately alleged that the permits were revoked and extinguished following the City's stop work order and issuance of an "intent to revoke."

Considering the allegations in the FAC, including the circumstances surrounding the City's decision to designate the Property an HCM following Plaintiffs' purchase of the Property and issuance of demolition and grading permits, the Court finds no reason to stray from its prior conclusion that Plaintiffs have satisfied the modest finality requirement. Neither the possibility that the State Court Action could result in the eventual removal of the Property's HCM designation nor the fact that Plaintiffs could seek additional or alternative permits for the Property renders Plaintiffs' takings claim unripe. See Knick v. Twp. of Scott, Pennsylvania, 588 U.S. 180, 190, 139 S. Ct. 2162 (2019) ("The Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner."). The allegations in the FAC suggest that the City took a "definitive position on the issue" of the HCM designation and whether Plaintiffs could use the Property as they had originally intended when they purchased it. See Pakdel, 594 U.S. at 478 (quoting Williamson Cnty., 473 U.S. at 193); see also Killgore v. City of South El Monte, 2020 WL 4258584, at *5–7 (C.D. Cal. Apr. 24, 2020) (adjudicating a takings claim challenging revocation of a use permit on the merits). Accordingly, based on the current record, the Court proceeds on the assumption that Plaintiffs' regulatory takings claim is ripe for review.[6/]

---

decision regarding the application of the regulations to the property at issue, is 'automatically satisfied at the time of the physical taking' because '[w]here there has been a physical invasion, the taking occurs at once[.]'" (quoting Daniel v. County of Santa Barbara, 288 F.3d 375, 382 (9th Cir. 2002))). The Court therefore considers the City's ripeness arguments only in the context of Plaintiffs' regulatory takings claim.

[6/] With its Reply, the City submits evidence supporting its contention that an "intent to revoke" does not indicate a permit has been revoked. Because this argument was improperly raised for the first time on reply, the Court does not consider it in ruling on the Motion to Dismiss. See Zamani, 491 F.3d at 997. Further, even if the documents themselves were subject

2. Penn Central Factors

The parties dispute whether the FAC alleges a viable regulatory takings claim under the test set forth in Penn Central Transportation Co. v. City of New York, 438 U.S. 104, 98 S. Ct. 2646 (1978). In Penn Central, the Supreme Court identified three factors for determining whether government action constitutes a regulatory taking: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." Id. at 124; see Bridge Aina Le'a, LLC v. Land Use Comm'n, 950 F.3d 610, 630 (9th Cir. 2020) ("The first and second Penn Central factors are the primary factors.").

Here, the FAC alleges that the City's HCM designation of the Property "severely devalued the property and eviscerated Plaintiffs' investment-backed expectations in purchasing the Property." (FAC ¶ 50.) The FAC alleges, specifically, that the property is worth approximately $820,000 with the designation, would be worth $9 million without it, and would be worth $17 million if redeveloped to its highest use. (Id. ¶¶ 52-55.) Plaintiffs also allege that the HCM restrictions "foreclose any possibility of developing even a portion of the parcel—hampering any realistic potential at recovering some value." (Id. ¶ 56.)

In applying the first Penn Central factor, courts "compare the value that has been taken from the property with the value that remains in the property." Colony Cove Props., LLC v. City of Carson, 888 F.3d 445, 450 (9th Cir. 2018) (internal quotations omitted). The Ninth Circuit has explained that "[a]lthough there is no litmus test . . . our value comparison again aims to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owners from his domain." Bridge Aina Le'a, LLC, 950 F.3d at 630–31 (internal quotations and citation omitted). "Supreme Court cases 'have long established that mere diminution in the value of property, however serious, is insufficient to demonstrate a taking.'" Rancho de Calistoga v. City of Calistoga, 800 F.3d 1083,

---

to judicial notice, "a court cannot take judicial notice of disputed facts contained in such public records." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018). Moreover, even setting aside the FAC's allegations regarding permit revocation, it appears that the City's decision to designate the Property as an HCM would suffice, at least on the current record, to establish ripeness. See, e.g., Zubik as Trustee, Roman Cath. Diocese of Pittsburgh v. City of Pittsburgh, 2025 WL 461533, at *9 (W.D. Pa. Feb. 11, 2025) (finding takings claim ripe based on city's acceptance of nomination for historic designation of plaintiff's church building).

1090 (9th Cir. 2015) (quoting Concrete Pipe & Products of California, Inc. v. Constr. Laborers Pension Trust for S. California, 508 U.S. 602, 645, 113 S. Ct. 2264 (1993)).

Here, Plaintiffs argue that they have met this prong because, comparing the alleged potential future value of $17 million to the alleged current value of $820,000, Plaintiffs have suffered a 95% diminution in the value of their property. But "economic impact is determined by comparing the total value of the affected property before and after the government action." Colony Cove Props., LLC v. City of Carson, 888 F.3d 445, 451 (9th Cir. 2018). Thus, the alleged diminution in value is 90% when comparing the value of the property before the HCM designation ($8.35 million) to the alleged value after the designation ($820,000). Even using the alleged current value of $9 million as the predesignation value. Plaintiffs have lost less than 91% of the value of the Property.

Plaintiffs do not allege that they have made any attempt to sell the Property. Nor do they allege that they have attempted to perform the repairs or maintenance needed to return the Property to a habitable state, or that the City could or would prevent them from doing so.[7/] Because the FAC fails to offer anything beyond a mere diminution in value of the Property, the first Penn Central factor weighs against Plaintiffs. See Colony Cove, 888 F.3d at 451 ("[W]e have observed that diminution in property value because of governmental regulation ranging from 75% to 92.5% does not constitute a taking."); Pakdel v. City & Cnty. of San Francisco, 636 F. Supp. 3d 1065, 1075 (N.D. Cal. 2022) (finding that plaintiff had not sufficiently pled the first Penn Central factor where plaintiff alleged a diminution in the property's value of $500,000, and explaining that "the FAC does not include any facts to establish the basis for this averred diminution in value"); see also Lucas, 505 U.S. at 1019 n.8 (suggesting that even a landowner with 95 percent loss might not recover).

As to the second Penn Central factor, "a purported distinct investment-backed expectation must be objectively reasonable" in order "to form the basis for a taking claim." Colony Cove, 888 F.3d at 452. "[W]hat is relevant and important in judging reasonable expectations is the regulatory environment at the time of the acquisition of the property." Bridge Aina Le'a, LLC, 950 F.3d at 634 (internal quotations and citation omitted); see Pakdel, 636 F. Supp. 3d at 1076 ("[T]his factor must consider the extent to which the challenged regulation departs from or extends beyond past or conceivable future regulatory developments."). Thus, "unilateral

---

[7/] As the City explains, the HCM designation does not prevent Plaintiffs from performing routine maintenance and repairs and continuing to use the Property as a single-family residential home. (See Mot. at p. 19; RJN Ex. 2, LAAC § 22.171.14.)

expectation[s]" or "abstract need[s]" cannot form the basis of a claim that the government has interfered with property rights. Bridge Aina Le'a, 950 F.3d at 633–34 (quoting Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1005, 104 S. Ct. 2862 (1984)). The expectation that a "property will be continually unencumbered by government regulation" is unreasonable. Rancho de Calistoga, 800 F.3d at 1090; see also id. at 1091 ("Simply put, when buying a piece of property, one cannot reasonably expect that property to be free of government regulation such as zoning, tax assessments, or, as here, rent control.").

Here, Plaintiffs again claim that they "purchased the Property with the intent to demolish the dilapidated structure, thereby allowing them to use the Property in other ways, including for potential redevelopment." (FAC ¶ 30.) Plaintiffs also allege that the Property was not designated as a HCM and the City did not express any interest in designating the Property in the 60 years prior to Plaintiffs' ownership of the Property. (Id. ¶¶ 34, 46.) However, the FAC fails to plausibly allege that Plaintiffs' expectations were objectively reasonable. On the contrary, Plaintiffs' own allegations suggest that, at the time they purchased the Property, they were aware of its historical connection to Ms. Monroe, the City's HCM designation process and applicable regulations were established, and, while prior owners had made substantial alterations to the property, no prior owner had demolished the buildings on the Property. (See id. ¶¶ 26, 31, 35); see also RJN, Ex. 1 at p. 15 (noting that Property seller disclosure stated, "The property used to be owned by Marilyn Monroe . . . . We get visits on the street from tourists, and they occasionally ring the doorbell . . . . While the house is not currently designated as a historic cultural monument, it could become subject to such designation in the future."). As alleged, Plaintiffs fail to demonstrate more than a mere unilateral expectation that they could demolish the Property as planned. Thus, the second Penn Central factor weighs against Plaintiffs.

In evaluating the third Penn Central factor, the Ninth Circuit considers whether a government action "amounts to a physical invasion or instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good." Guggenheim v. City of Goleta, 638 F.3d 1111, 1121 (9th Cir. 2010) (internal quotations omitted). As the Supreme Court recognized in Penn Central, "States and cities may enact land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city . . . ." 438 U.S. at 129. Here, while Plaintiffs insist that "the City has singled out Plaintiffs to bear the burden of preserving their Property in its current state for the indefinite future, sacrificing Plaintiffs' use, enjoyment, and investment in the Property for public benefit," this assertion is devoid of any factual support. (Opp'n at p. 20.) As discussed above, there are no facts alleged to suggest that the HCM designation authorizes the public to access the Property, nor is there any indication that the designation prevents Plaintiffs from using the Property as a single-family residential home as it had been used in the past.

Plaintiffs therefore fail to allege facts to support a takings claim under the third Penn Central factor.

In sum, because the FAC fails to establish a viable takings claim under any of the Penn Central factors, Plaintiffs' regulatory takings claims must be dismissed.

## Conclusion

For all of the foregoing reasons, the Court concludes that Plaintiffs have failed to state a viable takings claim and therefore grants Defendant's Motion to Dismiss. Plaintiffs do not request leave to amend, however. And, based on the FAC's allegations concerning, for example, the history of the Property, the regulatory framework at the time Plaintiffs purchased the Property, their remaining ability to repair the Property and use it as a single-family home, and the mere diminution in value, it appears to the Court that "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." See DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992); see id. at 659. The Court therefore determines that leave to amend would be futile and dismisses the FAC without leave to amend.

IT IS SO ORDERED.